UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------- X

IN RE SOUTH AFRICAN APARTHEID
LITIGATION

OPINION & ORDER

02 MDL 1499 (SAS)

---------------------------------------------------- X

This Document Relates to:

---------------------------------------------------- X

SAKEWE BALINTULO, *et al.*,

        Plaintiffs,

    - against -

03 Civ. 4524 (SAS)

DAIMLER AG, *et al.*,

        Defendants.

---------------------------------------------------- X

**SHIRA A. SCHEINDLIN, U.S.D.J.:**

## 1.    INTRODUCTION

Two actions brought on behalf of massive classes of South Africans ("plaintiffs") assert that several multinational corporations ("defendants") aided and abetted torts in violation of customary international law. Plaintiffs claim

jurisdiction in United States courts under the Alien Tort Claims Act ("ATCA").[1] These lawsuits address the obligations of corporations under the law of nations, the role of American courts in enforcing universal norms of international law, and the legacy of South African apartheid.

The long procedural history of these cases dates back to the filing of complaints in 2002. Since that time, defendant Rheinmetall AG has contested personal jurisdiction and the effectiveness of service under the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters ("Hague Convention").[2] However, resolution of those issues had been stayed pending resolution of the consolidated motion to dismiss filed by the other defendants.[3]

On April 8, 2009, this Court granted in part and denied in part defendants' consolidated motion to dismiss these actions in their entirety.[4]

---

[1]   28 U.S.C. § 1350. This provision is alternatively known as the Alien Tort Statute ("ATS").

[2]   Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

[3]   *See* 12/4/08 Letter from Jerome S. Hirsch, counsel for Rheinmetall, to the Court.

[4]   *See In re S. Afr. Apartheid Litig.* ("*Apartheid II*"), No. 02 MDL 1499, 2009 WL 960078 (S.D.N.Y. Apr. 8, 2009). *See also In re S. Afr. Apartheid Litig.*

2

Rheinmetall now moves to dismiss the claims against it based on both lack of personal jurisdiction and improper service.[5]  Plaintiffs have counter-moved for authorization of an alternative form of service under Federal Rule of Civil Procedure 4(f)(3).[6]  For the reasons stated below, Rheinmetall's motion to dismiss is denied with leave to re-file after the conclusion of limited jurisdictional discovery.  Plaintiffs' motion for authorization of alternative service is granted.

## II.   BACKGROUND

### A.   Rheinmetall AG's Presence in the United States

Rheinmetall AG is a German holding company, headquartered in Düsseldorf, Germany.[7]  As a holding company, Rheinmetall does not directly manufacture or sell any products; nor is it authorized or registered to do business

---

("*Apartheid III*"), No. 02 MDL 1499, 2009 WL 1579093 (S.D.N.Y. May 27, 2009) (denying reconsideration).

[5]   *See* Rheinmetall AG's Memorandum of Law in Support of its Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process ("Def. Mem.") at 1.

[6]   *See* Balintulo Plaintiffs' Opposition to Rheinmetall AG's Motion to Dismiss for Lack of Personal Jurisdiction and Insufficiency of Service of Process ("Pl. Mem.") at 16 n.18.

[7]   *See* Corrected Second Amended Complaint ("CSAC") ¶ 35; 4/28/09 Declaration of Andreas Beyer, General Counsel, Rheinmetall AG ("Beyer Decl."), ¶ 3.

in the United States.[8]  Although Rheinmetall executives participate in investor

conferences in the United States, the company has engaged in almost no other

direct action in the United States, including the commencement of lawsuits, the

marketing of products, or the purposeful listing of stock.[9]

Rheinmetall owns numerous subsidiaries, including a separately

incorporated armaments manufacturer known as Rheinmetall Defence

("DeTec").[10]  The companies presently "share the same headquarters,

communications and press operations, and, since 2004, Chief Executive Officer

("CEO")."[11]  Moreover, Rheinmetall has bound DeTec – along with its other

subsidiaries – to a global labor agreement concerning social responsibility and

---

[8]      *See* Beyer Decl. ¶¶ 3, 6.

[9]      *See id.* ¶ 6.  The Bank of New York Mellon maintains an American
Depository Receipt ("ADR") program that allows trading of Rheinmetall stock in
American markets. *See* 11/24/08 SEC Form F-6 Registration Statement, Ex. I to
5/22/09 Declaration of Steig D. Olson, plaintiffs' attorney ("Olson Decl.").
However, the Rheinmetall ADR program is unsponsored. *See* 6/3/09 Declaration
of Andreas Beyer ("2d Beyer Decl.") ¶ 3.

[10]      *See* CSAC ¶ 35; 2d Beyer Decl. ¶¶ 6, 8.

[11]      CSAC ¶ 35.  Rheinmetall points out that in 2000, Rheinmetall DeTec
was headquartered in Ratigen, whereas Rheinmetall is currently headquartered in
Düsseldorf. *See* 2d Beyer Decl. ¶ 8. *See also* 10/11/00 Rheinmetall
Advertisement, Ex. K to Olson Decl.  This does not rebut plaintiffs' assertion that
the two companies *presently* share a headquarters.

4

conformance with the standards of the International Labor Organization.[12]

Rheinmetall also runs a central communications department for all subsidiaries,

both presenting the image of a unified company and controlling the ability of

subsidiaries to manage their own public relations.[13]   Finally, Rheinmetall's

governance structure has consistently placed a member of Rheinmetall's four-

member management board as CEO of DeTec, along with executive positions in

numerous other subsidiaries of DeTec.[14]   Rheinmetall publicly describes DeTec as

"the Defence arm of Germany's Rheinmetall Group" and "Rheinmetall AG's

Defence unit."[15]

Rheinmetall's subsidiaries have engaged in extensive defense

---

[12]   *See* 10/03 Social Responsibilities Guidelines, Ex. J to Olson Decl.

[13]   *See* CSAC ¶ 35.  *See also, e.g.*, 10/1/03 Press Release, Ex. E to Olson Decl. (providing Rheinmetall contact information on a DeTec press release).

[14]   *See* 2004 Rheinmetall AG Annual Report at 108 (noting that Klaus Eberhardt is both a member of the Rheinmetall executive board and CEO of DeTec); 2002 Rheinmetall AG Annual Report at 114, Ex. A to Olson Decl. (noting that Ernst-Otto Krämer is a member of the Rheinmetall AG management board); 2002 Rheinmetall DeTec Annual Report at 96 (noting that Krämer is chairman of DeTec's executive board), Ex. A to Olson Decl.  Notably, senior executives of the numerous Rheinmetall subsidiaries are consistently shuffled through the companies. *See, e.g.*, 10/1/09 Press Release, Ex. E to Olson Decl.

[15]   1/23/06 Press Release, Ex. E to Olson Decl. (regarding "Defence unit"); 5/21/09 Website Screen Capture, *Leading Position in Defense Technology*, Ex. E to Olson Decl. (regarding "Defence arm").

contracting with the United States military. From fiscal year 2003 to the present,

Rheinmetall subsidiaries have won contracts valued at over $120 million.[16] The

Rheinmetall family of companies includes at least one subsidiary specifically for

the manufacture and sale of arms to the United States military – American

Rheinmetall Munitions, Inc. ("ARM").[17] Rheinmetall subsidiaries have also

established a number of weapons development projects alongside American

defense contractors, including the naval Millennium Gun and the Skyshield 35 air

defense system with Lockheed Martin[18] and the Prospector and Thunder

unmanned aerial vehicles with Teledyne Brown.[19]

### B.    Service of Process

Plaintiffs commenced this action on November 11, 2002. Soon

thereafter, plaintiffs retained Legal Language Services ("LLS") to provide

international litigation support.[20] On March 20, 2003, LLS transmitted a Hague

---

[16]    *See* 5/20/09 Usaspending.gov Reports, Ex. F to Olson Decl.

[17]    *See* 7/16/08 Press Release, Ex. F to Olson Decl.

[18]    *See* 10/04 Strategic Development Presentation, Ex. B to Olson Decl., at 13, 17.

[19]    *See* 12/1/04 Press Release, Ex. G to Olson Decl.

[20]    *See* Affidavit of Karina Shreefer ("Shreefer Aff."), attorney/consultant, LLS, ¶¶ 1, 4, Ex. M to Olson Decl.

Convention service request to the Central Authority for Northrhine-Westphalia including treaty paperwork and a copy of the Complaint translated into German.[21] Rheinmetall challenged the propriety of service through Hague Convention processes before German courts, and the issue remains unresolved despite over six years of litigation.[22]

The injunction against service of plaintiffs' Complaint is part of a larger pattern of stays issued by German courts against Hague Convention service of process stemming from American class-action lawsuits.[23] After a class of American intellectual-property owners sued German media company Bertelsmann AG in March 2003, Bertelsmann argued that service of process should be rejected on the basis that American class-action and punitive damages laws infringed on German sovereignty and security.[24] The dispute reached the Bundesverfassungsgericht – the Federal Constitutional Court – which temporarily

---

[21]   *See id.* ¶ 4.

[22]   *See id.* ¶ 13; Beyer Decl. ¶ 28.  The question remains before an intermediate appeals court, the Third Civil Appeals Court.  *See* Shreefer Aff. ¶ 13.

[23]   *See* Shreefer Aff. ¶¶ 7-13.  *See generally* Axel Halfmeier, *Book Review – Hopt, Kulm and von Hein's* Rechtshilfe und Rechtsstaat. Die Zustellung einer US-amerikanischen Class Action in Deutschland, 7 Ger. L.J. 1159 (2006) (describing the dispute).

[24]   *See* Shreefer Aff. ¶¶ 8-9.  *See also* Halfmeier, *supra*, at 1160.

enjoined service of process on July 25, 2003.[25]  The Bundesverfassungsgericht

granted four six-month extensions to the original temporary injunction, and it still

had not ruled on the merits of the dispute when Bertelsmann settled the case and

withdrew its appeal in November 2005.[26]  Since the Bertelsmann episode, at least

one other German company has successfully prevented service by claiming that

American class-action procedures and damages provisions infringe on German

sovereignty and security.[27]

## III.   APPLICABLE LAW

### A.   Personal Jurisdiction

#### 1.   Rule 12(b)(2)

"In opposing a motion to dismiss for lack of personal jurisdiction,

'the plaintiff bears the burden of establishing that the court has jurisdiction over

the defendant.'"[28]  "Where, as here, a district court relies on the pleadings and

---

[25]     *See* Shreefer Aff. ¶ 11.

[26]     *See id.* ¶ 12. *See also* Halfmeier, *supra*, at 1163.

[27]     *See* Halfmeier, *supra*, at 1162-63. *See also Oberlandesgericht* [OLG]
[Appeals Court] June 27, 2005, 26 Praxis Des Internationalen Privat-und
Verfahrensrects [IPRax] 25 (2006).  This intermediate appellate decision is
currently on appeal to the Federal Court of Justice. *See* Halfmeier, *supra*, at 1164.

[28]     *Grand River Enters. Six Nations, Ltd. v. Pryor*, 425 F.3d 158, 165 (2d
Cir. 2005) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171
F.3d 779, 784 (2d Cir. 1999)).

affidavits, and chooses not to conduct a 'full-blown evidentiary hearing,' plaintiffs

need only make a prima facie showing of personal jurisdiction over the

defendant."[29]  A court must "construe the pleadings and affidavits in the light most

favorable to plaintiffs, resolving all doubts in their favor."[30]

### 2.    Rule 4(k)(2)

Under Federal Rule of Civil Procedure 4(k)(2),

> For a claim that arises under federal law, serving a
> summons or filing a waiver of service establishes personal
> jurisdiction over a defendant if the defendant is not subject
> to jurisdiction in any state's courts of general jurisdiction;
> and exercising jurisdiction is consistent with the United
> States Constitution and laws.[31]

"'A case arises under federal law . . . if a well-pleaded complaint establishes

either that federal law creates the cause of action or that the plaintiff's right to

relief necessarily depends on resolution of a substantial question of federal

law.'"[32]

---

[29]    *Porina v. Marward Shipping Co. Ltd.*, 521 F3d 122, 126 (2d Cir.
2008) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)).

[30]    *Id.* (citing *DiStefano*, 286 F.3d at 84).

[31]    *Accord Porina*, 521 F.3d at 127 (dividing the Rule into a three-part
test).

[32]    *Bay Shore Union Free School Dist. v. Kain*, 485 F.3d 730, 734 (2d
Cir. 2007) (quoting *Empire Healthchoice Assur. v. McVeigh*, 547 U.S. 677, 689-90
(2006)).

9

In order to establish that a defendant is not subject to jurisdiction in any state's courts of general jurisdiction, a plaintiff who seeks to invoke Rule 4(k)(2)

> must certify that, based on the information that is readily available to the plaintiff and his [or her] counsel, the defendant is not subject to suit in the courts of general jurisdiction of any state. If the plaintiff makes out his [or her] prima facie case, the burden shifts to the defendant to produce evidence which, if credited, would show either that one or more specific states exist in which it would be subject to suit or that its contacts with the United States are constitutionally insufficient.[33]

This burden-shifting framework prevents the "Catch-22" in which a defendant would be forced "to choose between conceding its potential amenability to suit in federal court (by denying that any state court has jurisdiction over it) or conceding its potential amenability to suit in some identified state court."[34]

### 3.   Due Process Requirements

---

[33]   *United States v. Swiss Am. Bank, Ltd.*, 191 F.3d 30, 41-42 (1st Cir. 1999) (citing Stephen B. Burbank, *The United States' Approach to International Civil Litigation: Recent Developments in Forum Selection*, 19 U. Pa. J. Int'l Econ. L. 1, 13 (1998)). *Accord Aqua Shield, Inc. v. Inter Pool Cover Team*, No. 05 Civ. 4880, 2007 WL 4326793, at *8-*10 (E.D.N.Y. Dec. 7, 2007) (applying this burden-shifting framework).

[34]   *Swiss Am. Bank, Ltd.*, 191 F.3d at 41 (citing Dora A. Corby, Comment, *Putting Personal Jurisdiction Within Reach: Just What Has Rule 4(k)(2) Done for the Personal Jurisdiction of Federal Courts?*, 30 McGeorge L. Rev. 167, 196 (1998)).

Under the Fifth Amendment to the U.S. Constitution, "Due process permits a court to exercise personal jurisdiction over a non-resident where the maintenance of the suit would not 'offend traditional notions of fair play and substantial justice.'"[35] Second Circuit law requires a two step analysis. *First*, a court must determine "whether the defendant has sufficient minimum contacts with the forum to justify the court's exercise of personal jurisdiction."[36] *Second*, a court must "consider whether the assertion of personal jurisdiction 'is reasonable under the circumstances of the particular case.'"[37]

"A court's general jurisdiction over a non-resident . . . is based on a defendant's general business contacts with the forum, and 'permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts.'"[38] The court "must evaluate the 'quality and nature,' of the defendant's contacts with the forum state under a totality of the circumstances

---

[35]     *Porina*, 521 F.3d at 127 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

[36]     *Id.* (citing *Metropolitan Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 567-68 (2d Cir. 1996)).

[37]     *Id.* (quoting *Metropolitan Life*, 84 F.3d. at 568).

[38]     *Id.* (quoting *Metropolitan Life*, 84 F.3d at 568).

test."[39]  "The crucial question is whether the defendant has 'purposefully avail[ed] itself of the privilege of conducting activities within the forum . . . , thus invoking the benefits and protections of its laws such that [the defendant] should reasonably anticipate being haled into court there.'"[40]

When a plaintiff has invoked Rule 4(k)(2) as the basis for jurisdiction in federal court, the minimum contacts analysis is "based on [defendant's] contacts with the United States as a whole."[41]  Thus meeting the "'stringent minimum contacts test' for general jurisdiction cases" invoking Rule 4(k)(2) requires a showing that the defendant "had 'continuous and systematic general business contacts' with the United States."[42]  This inquiry requires examination of "'a defendant's contacts with the forum state over a period that is reasonable under the circumstances – up to and including the date the suit was filed.'"[43]  As jurisdiction

---

[39]     *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)).

[40]     *Id.* (quoting *Burger King Corp.*, 471 U.S. at 474-75) (alterations in original).  *Accord Keeton v. Hustler Magazine Inc.*, 465 U.S. 770, 781 (1984) (finding specific jurisdiction in New Hampshire federal district court when a defendant "continuously and deliberately exploited the New Hampshire market").

[41]     *Dardana Ltd. v. Yugaskneftegaz*, 317 F.3d 202, 207 (2d Cir. 2003).

[42]     *Porina*, 521 F.3d at 127 (quoting *Metropolitan Life*, 84 F.3d at 568).

[43]     *Id.* (quoting *Metropolitan Life*, 84 F.3d at 569).

attaches at the time the complaint is filed, the only relevant contacts are those predating commencement of the action.[44] Jurisdiction need not be based on actions "conducted by the foreign corporation itself. . . . In certain circumstances, jurisdiction has been predicated upon activities performed in [the forum] for a foreign corporation by an agent."[45]

> [A] foreign corporation is doing business in [a jurisdiction] 'in the traditional sense' when its . . . representative provides services beyond 'mere solicitation' and these services are sufficiently important to the foreign corporation that if it did not have a representative to perform them, the corporation's own officials would undertake to perform substantially similar services.[46]

The reasonableness of a court's exercise of personal jurisdiction is assessed using several diverse factors.

---

[44]     See *Metropolitan Life*, 84 F.3d at 569.  *See also id.* at 575-76 (finding a limitation on jurisdictional discovery to a six-year period ending at the time the complaint was filed to be reasonable).

[45]     *Wiwa v. Royal Dutch Petroleum Co.*, 226 F.3d 88, 95 (2d Cir. 2000).

[46]     *Gelfand v. Tanner Motor Tours, Ltd.*, 385 F.2d 116, 120-21 (2d Cir. 1967).  Although *Wiwa* and *Gelfand* applied New York law concerning the activities of agents, *see Wiwa*, 226 F.3d at 95 (citing *Frummer v. Hilton Hotels Int'l Inc.*, 19 N.Y.2d 533, 537 (1967)); *Gelfand*, 385 F.2d at 119 (same), the Circuit found in each opinion that application of New York personal jurisdiction principles would not offend federal constitutional notions of due process.  *See Wiwa*, 226 F.3d at 98-99; *Gelfand*, 385 F.2d at 121.  As these standards are used here only to address the constitutionality of exercising personal jurisdiction over Rheinmetall, they are convenient and applicable frameworks.

> A court must consider the burden on the defendant, the interests of the forum State, and the plaintiff's interest in obtaining relief. It must also weigh in its determination "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several States in furthering fundamental substantive social policies."[47]

In transnational litigation, the Supreme Court has specifically cautioned that "[t]he unique burdens placed upon one who must defend oneself in a foreign legal system should have significant weight in assessing the reasonableness of stretching the long arm of personal jurisdiction over national borders."[48] Moreover, when "the plaintiff is not a [forum] resident, [the forum's] legitimate interests in the dispute have considerably diminished."[49]  Finally, courts must also "consider the procedural and substantive policies of other nations whose interests are affected by the assertion of jurisdiction."[50]

### 4.    Jurisdictional Discovery

Allowance of jurisdictional discovery is committed to the discretion

---

[47]    *Asahi Metal Indus. Co. v. Superior Ct. of Calif.*, 480 U.S. 102, 113 (1987) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980)).

[48]    *Id.* at 114.

[49]    *Id.*

[50]    *Id.* at 115 (citing *World-Wide Volkswagen*, 444 U.S. at 292).

of the district court.[51]  Where plaintiffs have alleged facts that would merely

"arguably satisfy" the requirements of due process, it is within a court's discretion

to allow "further development on this point *prior* to a conclusion that they have

failed to make a prima facie showing" concerning personal jurisdiction.[52]

Specifically, a personal jurisdiction inquiry concerning allegations of general

jurisdiction on the basis of the activities of an alleged agent "involves a

multi-factor test that is very fact-specific" and permits discovery concerning both

the agency relationship and activity in the forum.[53]

### B.     Service of Process

#### 1.     Rule 12(b)(5)

"'Before a federal court may exercise personal jurisdiction over a

---

[51]     *See In re Terrorist Attacks on Sept. 11, 2001*, 538 F.3d 71, 79 (2d Cir. 2008) (citing *Best Van Lines*, 490 F.3d at 255).

[52]     *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d 204, 208 (2d Cir. 2003) (emphasis added). *Accord Wiwa v. Shell Petroleum Dev. Co. of Nigeria Ltd.*, No. 08-1803, 2009 WL 1560197, at *2 (2d Cir. June 3, 2009) (finding jurisdictional discovery appropriate when a court demands "specific factual averments to support . . . jurisdictional allegations); *Ehrenfeld v. Mahfouz*, 489 F.3d 542, 550 n.6 (2d Cir. 2007) ("If the District Court understood *Jazini* as forbidding jurisdictional discovery any time a plaintiff does not make a prima facie showing of jurisdiction, this would indeed be legal error.") (citing *Jazini v. Nissan Motor Co.*, 148 F.3d 181 (2d Cir. 1998)).

[53]     *In re Magnetic Audiotape Antitrust Litig.*, 334 F.3d at 208.

defendant, the procedural requirement of service of summons must be satisfied.'"[54]

Under Federal Rule of Civil Procedure 12(b)(5), a court may dismiss an action

against one or more defendants on the ground of "insufficient service of process."

Plaintiffs carry the burden of proving the sufficiency of service.[55]  Absent

perfected service, a court lacks jurisdiction to dismiss an action with prejudice;

therefore dismissal pursuant to Rule 12(b)(5) must be without prejudice.[56]

### 2.     Rule 4(h), Rule 4(f), and the Hague Convention

The acceptable methods of service of a summons and complaint in

federal court are set forth in Rule 4 of the Federal Rules of Civil Procedure.  Rule

4(h) specifically establishes that "a foreign corporation . . . must be served in a

judicial district of the United States . . . or at a place not within any judicial district

of the United States, in any manner prescribed by Rule 4(f) for serving an

individual, except personal delivery . . . ."  In turn, Rule 4(f) permits service

outside the United States "by any internationally agreed means of service that is

---

[54]     *Dynegy Midstream Servs. Trammochem*, 451 F.3d 89, 94 (2d Cir.
2006) (quoting *Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104
(1987)).

[55]     *Burda Media, Inc. v. Viertel*, 417 F.3d 292, 298 (2d Cir. 2005) (citing
*Mende v. Milestone Tech., Inc.*, 269 F. Supp. 2d 246, 251 (S.D.N.Y. 2003)).

[56]     *See, e.g.*, *Betty K Agencies, Ltd. v. M/V Monada*, 432 F.3d 1333, 1341
(11th Cir. 2005).

16

reasonably calculated to give notice, such as those authorized by the Hague Convention . . . ."[57]

"The [Hague] Convention provides simple and certain means by which to serve process on a foreign national";[58] one such means is "service through the Central Authority of [a] member state[]."[59]  Pursuant to the Hague Convention, each signatory must "designate a Central Authority which will undertake to receive requests for service coming from other Contracting States."[60] Upon proper delivery of a request for service to the Central Authority, the Central Authority "shall itself serve the document or shall arrange to have it served by an appropriate agency."[61]  "Where a request for service complies with the terms of the [Hague] Convention, the State addressed may refuse to comply therewith only if it

---

[57]    Fed. R. Civ. P. 4(f)(1).  Subject to enumerated restrictions, Rule 4(f)(2) permits alternative service "if there is no internationally agreed means, or if an international agreement allows but does not specify other means, by a method that is reasonably calculated to give notice."

[58]    *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 706 (1988).

[59]    *Burda Media*, 417 F.3d at 300 (citing Hague Convention arts. 5, 6, 8-10).

[60]    Hague Convention art. 3.

[61]    *Id.* art. 6.

deems that compliance would infringe its sovereignty or security."[62]  As Germany

has objected to service by judicial agent, by mail, or by diplomat, service via the

Central Authority is the *only* means by which an American plaintiff may serve a

German defendant.[63]

"Although the Hague Convention 'carefully articulates the procedure

which a litigant must follow in order to perfect service abroad, . . . it does not

prescribe the procedure for the forum Court to follow should an element of the

procedure fail.'"[64]  Where a plaintiff "attempted in good faith to comply with the

Hague Convention" and the defendant does "not dispute having received the

complaint in this action . . . there is no prejudice to him [or her]."[65]

### 3.   Rule 4(m) and Service in a Foreign Country

"Federal Rule of Civil Procedure 4(m) provides that actions are

subject to dismissal without prejudice unless service is made within 120 days."[66]

---

[62]    *Id.* art. 13.

[63]    *See* Undated Declaration of the Federal Republic of Germany on the Hague Convention, ¶ 4, *available at* http://hcch.e-vision.nl/index_en.php?act=status.comment&csid=402&disp=resdn.

[64]    *Burda Media*, 417 F.3d at 301 (quoting *Fox v. Regie Nationale des Usines Renault*, 103 F.R.D. 453, 455 (W.D. Tenn. 1984)).

[65]    *Id.* at 302.

[66]    *Zapata v. City of New York*, 502 F.3d 192, 194 (2d Cir. 2007).

18

However, by its express terms "subdivision (m) does not apply to service in a foreign country,"[67] and the Federal Rules include no alternative deadline. Failure to "attempt to serve the defendant in the foreign country" remains grounds for dismissal,[68] but "the 120-day time period for service can be extended for service outside of the United States."[69] "District courts have discretion to grant extensions even in the absence of good cause."[70]

Once documents have been properly transmitted to a Hague Convention Central Authority, the period for completion of service of process may be extended, as "the timing of service is out of a plaintiff's control."[71] However, where a plaintiff had alternative means to achieve service within the ordinary time

---

[67]     Fed. R. Civ. P. 4(m).

[68]     *USHA (India), Ltd. v. Honeywell Int'l, Inc.*, 421 F.3d 129, 134 (2d Cir. 2005) (citing *Mentor Ins. Co. (U.K.) Ltd. v. Brannkasse*, 996 F.2d 506, 512 (2d Cir. 1993)).

[69]     *Thayer v. Dial Indus. Sales, Inc.*, 85 F. Supp. 2d 263, 266 n.1 (S.D.N.Y. 2000).

[70]     *Zapata*, 502 F.3d at 196.

[71]     *Broad v. Mannesmann Anlagenbau, A.G.*, 141 Wash. 2d 670, 683 (2000). *Accord In re Bulk (Extruded Graphite Products*, No. 02 Civ. 6030, 2007 WL 2212713, at *4 (D.N.J. July 30, 2007) (denying dismissal on the basis of inadequate service when plaintiffs promptly transmitted documents to the German Central Authority and the German Central Authority failed to serve defendant in a timely manner).

period – without the aid of a judicial order – equity does not require an extension.[72]

### 4.    Rule 4(f)(3)

Even when nations have expressly agreed on a means of service, Rule 4(f)(3) provides that a defendant may be served "by other means not prohibited by international agreement, as the court orders."  "A court is 'afforded wide discretion in ordering service of process under Rule 4(f)(3).'"[73]  "Court-directed service is particularly appropriate where a signatory to the Hague Service Convention has 'refused to cooperate for substantive reasons.'"[74]

Under the Hague Convention, a court may claim jurisdiction over a

---

[72]    *See Paracelsus Healthcare Corp. v. Philips Med. Sys., Nederland, B.V.*, 384 F.3d 492, 497 (8th Cir. 2004) (finding equitable tolling inappropriate when the plaintiff "failed to present any evidence showing it was prevented from bringing suit by pursuing any of the alternate means allowed under the Hague Convention for service of process"); *Conservatorship of Prom v. Sumitomo Rubber Indus., Ltd.*, 224 Wis. 2d 743, 756 n.2 (Ct. App. 1999) (holding that a short and predictable ministerial delay was not grounds for extension of the deadline to complete service).

[73]    *Securities & Exch. Comm'n v. Anticevic*, No. 05 Civ. 6991, 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (quoting *BP Prods. N. Am., Inc. v. Dagra*, 236 F.R.D. 270, 271 (E.D. Va. 2006)).

[74]    *Arista Records LLC v. Media Servs. LLC*, No. 06 Civ. 15319, 2008 WL 563470, at *1 (S.D.N.Y. Feb. 25, 2008) (quoting Fed. R. Civ. P. 4(f)(1), Advisory Committee Note to the 1993 Amendment).

foreign defendant when a plaintiff has not received a certificate of service or

delivery only if

> a) the document was transmitted by one of the methods
> provided for in this Convention, b) a period of time of not
> less than six months, considered adequate by the judge in
> the particular case, has elapsed since the date of the
> transmission of the document, [and] c) no certificate of any
> kind has been received, even though every reasonable
> effort has been made to obtain it through the competent
> authorities of the State addressed.[75]

Although Germany has objected to specific forms of service otherwise enumerated

in the Hague Convention, it has not expressly barred alternative forms of effective

service not referenced in the Hague Convention.[76]

> With respect to the range of alternative means of service
> the Court may order, "the basic inquiry is whether the
> method is reasonably calculated, under all the
> circumstances, to give actual notice to the party whose

---

[75] Hague Convention art. 15. *Accord Thomas v. Biocine Sclavo*, No. 94 Civ. 1568, 1998 WL 51861, at *1 (N.D.N.Y. Feb. 4, 1998) (Pooler, J.) (permitting a default judgment with no further effort to serve defendant after these requirements had been met); 11/19/92 Declaration of the German Government (permitting German courts to exercise jurisdiction under these conditions), *available at* http://hcch.e-vision.nl/index_en.php?act=status.comment&csid=402& disp=resdn.

[76] *See Anticevic*, 2009 WL 361739, at *4. *Cf. Agha v. Jacobs*, No. C. 07-1800, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (denying leave to file service by facsimile on a German defendant – the equivalent of mail service to which Germany has specifically objected – when plaintiff had not attempted service through the Central Authority).

interests are to be affected by the suit or proceeding, and to afford him an adequate opportunity to be heard; and the practicalities in a given case are a factor in determining whether constitutional requirements have been satisfied."[77]

## III.   DISCUSSION

### A.   Personal Jurisdiction

At this point, plaintiffs have not carried their burden to establish that at the time this suit was filed in 2002, this Court had jurisdiction over Rheinmetall. That is not the end of the inquiry however.  Plaintiffs have made a sufficient showing that the exercise of personal jurisdiction over Rheinmetall would arguably satisfy due process, entitling plaintiffs to jurisdictional discovery.

### 1.   Arising Under Federal Law

Plaintiffs have plainly satisfied the requirement under Rule 4(k)(2) that the claims arises under federal law.  Causes of action recognized under the ATCA are recognized by federal courts as established customary international law.[78]  "[J]udicial determinations of international law – including international

---

[77]     *KPN B.V. v. Corcyra D.O.O.*, No. 08 Civ. 1549, 2009 WL 690119, at *1 (S.D.N.Y. Mar. 16, 2009) (quoting *Levin v. Ruby Trading Corp.*, 248 F. Supp. 537, 540-41 (S.D.N.Y. 1965) (Weinfeld, J.)).

[78]     *See Sosa v. Alvarez-Machain*, 542 U.S. 692, 714 (2004).

human rights law – are matters of federal law."[79]  Moreover, it is clear that

plaintiffs' right to relief turns on the resolution of numerous substantial questions

of federal law.[80]

### 2.    Not Subject to Suit in Any Particular State

Plaintiffs claim that they need not prove that Rheinmetall was not

subject to jurisdiction in any particular state's court of general jurisdiction on the

basis that Rheinmetall has asserted that it was not subject to jurisdiction in any

American court.[81]  This argument would prevent any defendant from presenting

the alternative arguments that neither the second nor the third requirement of Rule

4(k)(2) jurisdiction is met, and thus it would relieve plaintiffs' burden to prove

each of the three requirements.  In accordance with its limited gap-filling

purpose,[82] Rule 4(k)(2) should only be invoked where plaintiffs have positively

---

[79]     Harold Hongju Koh, *Is International Law Really State Law?*, 111
Harv. L. Rev. 1824, 1825 (1998) (citing, *inter alia*, *Banco Nacional de Cuba v.
Sabbatino*, 376 U.S. 398, 425 (1964)).  *Accord Abdullahi v. Pfizer, Inc.*, 562 F.3d
163, 173 (2d Cir. 2009) (noting that the recognition of private claims under the
ATCA occurs "under federal common law").

[80]     *See, e.g.*, *Apartheid II*, 2009 WL 960078, at *22 (applying federal
common law vicarious liability principles).

[81]     *See* Pl. Mem. at 2-3.

[82]     *See* Fed. R. Civ. P. 4(k)(2), Advisory Committee Note to the 1993
Amendment.

demonstrated that the defendant is not subject to jurisdiction in any particular state.

Plaintiffs have presented sufficient facts to plausibly assert that Rheinmetall was not subject to general jurisdiction in any particular state, on the basis of Rheinmetall's lack of a formal presence within the United States. However, this showing is best made through a submission of a formal certification that Rheinmetall was not subject to jurisdiction in any particular state.[83]  If plaintiffs are able to make such a certification, they must do so within ten business days of the close of jurisdictional discovery.  Only then would the burden shift to Rheinmetall to contest that showing in a renewed motion to dismiss.

### 3.     Consistent with the U.S. Constitution

Concerning the third requirement for this Court to exercise jurisdiction pursuant to Rule 4(k)(2), Rheinmetall's contacts alone are insufficient to meet the minimum-contacts test, even aggregating its nationwide activity. Periodic appearances at trade shows or investors' conferences do not constitute continuous and systematic business contacts necessary to establish general

---

[83]     *See Aqua Shield, Inc. v. Inter Pool Cover Team*, No. 05 Civ. 4880, 2009 WL 29312 (E.D.N.Y. Jan. 5, 2009) (noting that plaintiffs were afforded the opportunity to provide a 4(k)(2) certification after the court established the legal framework that would be used to establish the propriety of jurisdiction).

jurisdiction.[84] That is not where this story ends, however, as plaintiffs have alleged that a principal-agent relationship exists between Rheinmetall, its wholly-owned subsidiaries, and those subsidiaries' wholly-owned subsidiaries. A corporation may not shield itself from liability merely by formally incorporating each of its divisions and subdivisions.

This Court established standards concerning agency in two prior opinions and presumes familiarity with those standards here.[85] The allegations and evidence put forward by plaintiffs concerning the relationship between Rheinmetall and DeTec paints a plausible picture of an integrated business unit. Plaintiffs have presented – at a minimum – individual instances of direct control of DeTec by Rheinmetall, shared facilities and staff, and overlapping directors and officers, all signs that DeTec may be an agent or even alter ego of Rheinmetall. These individual indicia alone do not quite establish a prima facie case that the subsidiaries are agents or alter egos, but these facts are a sufficient basis for a plausible argument that Rheinmetall's subsidiaries' contacts may be imputed to

---

[84]     *Cf. Landoil Res. Corp. v. Alexander & Alexander Servs., Inc.*, 918 F.2d 1039, 1044 (2d Cir. 1990) (finding that "employees' trips to the United States to service existing accounts and solicit new ones" did not constitute "systematic and continuous contact").

[85]     *See Apartheid II*, 2009 WL 960078, at *21-*24; *Apartheid III*, 2009 WL 1579093.

25

the parent company.

If plaintiffs are able to establish the existence of an agency or alter ego relationship between Rheinmetall and DeTec, the second stage of their argument – connecting DeTec to its subsidiaries – is far simpler. DeTec's subsidiaries – particularly ARM – are doing a tremendous volume of business with the Department of Defense. It is beyond peradventure that such services are sufficiently important to DeTec that DeTec would perform those same services if ARM could not and DeTec – as a foreign manufacturer – were not competitively disadvantaged when doing business directly with the U.S. government.[86]

In turn, imputing the contacts of Rheinmetall's subsidiaries to the parent company would present sufficient contacts with the United States for the exercise of general personal jurisdiction to arguably satisfy due process. A company that does more than $100 million in business with the federal government has deliberately acted within this nation, and the substantial profit generated by those business activities carries with it the burden of submission to the jurisdiction of our federal courts.[87] The notion that a company may do that

---

[86]     *See generally* 41 U.S.C. § 10a; 48 C.F.R. §§ 225.101-.104 (restricting purchases of foreign-origin military supplies).

[87]     Although these sales figures postdate the filing of this suit, this Court may plausibly infer that sales were not dramatically lower in the years up to and

volume of business in the United States without anticipating application of general jurisdiction is implausible at best.

Plaintiffs have also presented arguably sufficient allegations that make the exercise of jurisdiction by this Court over this case perfectly reasonable. Although this case would be less burdensome for Rheinmetall to defend if it were brought in Germany, New York is "a major world capital which offers central location, easy access, and extensive facilities of all kinds," lessening the burden.[88] Plaintiffs undoubtedly maintain a strong interest in obtaining relief in this case, and the United States has an established interest in the just resolution of human rights claims, regardless of the situs of the alleged violation.[89] Moreover, as this Court indisputably has jurisdiction over five other defendants remaining in this litigation, substantial efficiencies for all parties are achieved by the exercise of jurisdiction over Rheinmetall. Finally, the community of nations – including Germany – has universally established a shared interest in furthering the substantive social policy underpinning this litigation – namely the resolution of

---

including 2002.

[88]     *Wiwa*, 226 F.3d at 99.

[89]     *See* Torture Victim Protection Act, § 2(a), *codified at* 28 U.S.C. § 1350 note (establishing liability for torture or extrajudicial killing carried out in foreign nations).

claimed violations of customary international law.[90]

   This Court will delay the final determination concerning the due process analysis until it has been presented with a full evidentiary record. Plaintiffs have undoubtedly met the threshold requirement that Rhinmetall's activities through its subsidiaries arguably satisfy the due process requirements of general jurisdiction.  However, the bulk of evidence put forward by plaintiffs post-dates the filing of the Complaint, as information of more recent vintage is more likely to be found in the public domain.[91]  Relevant information is limited to a period of approximately seven years prior to the commence of this lawsuit, from 1995 to 2002.[92]  Deprived of their strongest evidence, plaintiffs have not yet

---

[90] *See Germany – The International Criminal Court*, http://www.auswaertiges-amt.de/diplo/en/Aussenpolitik/InternatRecht/IStGh/ICC. html (describing the leading role taken by the Federal Republic of Germany to advance the creation of an International Criminal Court); Frederick Honig, *The Reparations Agreement Between Israel and the Federal Republic of Germany*, 48 Am. J. Int'l L. 564 (1954) (describing an agreement to provide reparations for past crimes including violations of the law of nations).

[91] *See* Reply Memorandum of Law in Support of Rheinmetall AG's Motion to Dismiss for Lack of Personal Jurisdiciton and Insufficiency of Service of Process at 1 (asserting that plaintiffs have attempted "to 'Google' their way to Rule 4(k)(2) jurisdiction").

[92] *See Metropolitan Life*, 84 F.3d at 569 (noting the use of a seven-year period to analyze the extent of a defendant's contact with the forum in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408 (1984)).

proven that Rheinmetall is properly subject to the jurisdiction of this Court.[93]

Therefore this Court will test a fully developed record against the full burden of

establishing personal jurisdiction by a preponderance of the evidence.

**B.      Service of Process**

          In an attempt to avoid this Court's jurisdiction, Rheinmetall has taken

steps in Germany to thwart plaintiffs' good faith efforts to serve it with a summons

and complaint.  Rheinmetall has now appeared in this Court to decry the lack of

successful service and request dismissal with prejudice on the ground of

insufficient service of process.  Even if this Court were to determine that

plaintiffs' efforts at service have been inadequate, dismissal under Rule 12(b)(5)

would be without prejudice, allowing plaintiffs to refile this action.  Thus the

dispute concerning service of process via the Central Authority in Germany would

merely be repeated.[94]

---

[93]      If this Court were analyzing the facts as of the present date, the
evidence would be sufficient to establish personal jurisdiction over Rheinmetall.

[94]      Although dismissal and refiling would affect statute of limitations
calculus, plaintiffs might present a plausible argument concerning equitable tolling
for the period during which the German Central Authority refused to execute
service.  *Cf. Valverde v. Stinson*, 224 F.3d 129, 133-34 (2d Cir. 2000) (describing
how intentional interference with the initiation of a lawsuit may constitute
extraordinary or exceptional circumstances during which a statute of limitations
may be tolled).

There is no reasonable manner in which plaintiffs could have exerted greater effort to carry out proper service of process in conformity with Rule 4(h), Rule 4(f), and the Hague Convention. Over six years after plaintiffs transmitted the necessary documents to the Central Authority for Northrhine-Westphalia, the Central Authority has failed to serve Rheinmetall. The German courts have not reached a determination that the Central Authority is permitted to decline to complete service in light of sovereignty or security concerns pursuant to Article Thirteen of the Hague Convention. Nor has Rheinmetall been prejudiced by the failure to complete service, as it is aware of this lawsuit and has until now been subject to a stay of all proceedings against it.[95]

Although service on a foreign defendant is not limited by the 120-day deadline applicable to domestic defendants, in an ordinary case a six year delay in service of process would be grounds for dismissal for failure to prosecute.[96] This is not an ordinary case. For one thing, it took six years to resolve the motions to dismiss, and discovery is just beginning. Plaintiffs' diligent efforts to make

---

[95]     *See Apartheid II*, 2009 WL 960078, at *21 n.231. Rheinmetall retains the right to move to dismiss even after all other defendants have moved or answered. *See id.*

[96]     *See Montalbano v. Easco Hand Tools, Inc.*, 766 F.2d 737, 740 (2d Cir. 1985).

service constitute good cause to permit service even after six years.  Thus far, the

timing of service has been entirely out of plaintiffs' control.  The time has come

for this Court to place control back in plaintiffs' hands so that this litigation can

progress.

Therefore, plaintiffs' request pursuant to Rule 4(f)(3) for a court order

permitting alternative service is hereby granted.  Although Germany has expressly

forbidden service by judicial agent, by mail, or by diplomat – and has implicitly

forbidden service of class action lawsuits through a designated Central Authority –

it has not expressly forbidden numerous other potential avenues to insure that a

defendant is aware of the allegations against it.  This Court need only select one

reliable mechanism.  Plaintiffs are hereby granted sixty days to serve Jerome S.

Hirsch, counsel for Rheinmetall, with a summons and copies of the Corrected

Second Amended Complaint in both English and German.[97]

This alternative service is in full conformity with the Hague

Convention, in light of the jurisdictional safety value in Article Fifteen.  Plaintiffs

meet all three elements required for this Court to exercise jurisdiction in the

absence of a certificate of service.  The summons and translated Complaint were

---

[97]     *Cf. Levin*, 248 F. Supp. at 541 (permitting service at the address of
defendants' known legal counsel).

transmitted to the Central Authority for Northrhine-Westphalia, in conformity with

Articles Three through Six of the Hague Convention. Moreover, a period of over

six years has elapsed since the date of transmission of the document, which this

Court finds more than adequate. Finally, plaintiffs have received no certificate of

proper service, despite undertaking every reasonable effort to effect service via the

Central Authority.

Nor do comity considerations warrant denial of plaintiffs' request for

an order permitting alternative service. It is true – as Rheinmetall argues – that

"important issues pend before the German court."[98]  However, the Hague

Convention provides that a Central Authority may delay proceedings for only a

limited period before the originating court may exercise jurisdiction in the absence

of cooperation by the foreign Central Authority. Comity dictates that this Court

cannot order the German Court to assist this litigation by transmitting judicial

documents, but it does not shield German defendants entirely. If German courts

had reached a final judgment that service via Hague Convention processes would

violate German sovereignty or security, comity considerations would be stronger.

---

[98]     Def. Mem. at 10

That has not yet – and may never – come to pass.[99]

## IV.   CONCLUSION

Over forty years ago, the New York Court of Appeals took heed of the plight of a foreign corporation sued in the United States, using words that remain accurate today:  "I are not unmindful that litigation in a foreign jurisdiction is a burdensome inconvenience for any company. However, it is part of the price which may properly be demanded of those who extensively engage in international trade."[100]  Plaintiffs have not yet demonstrated that Rheinmetall is subject to suit in this Court.  However, they have made a sufficient showing to convince this Court that the best course is to undertake jurisdictional discovery, so that this Court may make a final determination concerning personal jurisdiction on a full evidentiary record.

For the foregoing reasons, Rheinmetall's motion to dismiss is denied with leave to renew at the close of jurisdictional discovery.  Plaintiffs' motion for

---

[99]     *See* Halfmeier, *supra*, at 1158, 1161-62 (noting that "Germany's most prominent research institution in this field, the Max Plank Institute for Comparative and International Private Law," concluded in a study solicited by the Bundesverfassungsgericht that "service of process for an American class action including punitive damages must be effected in Germany and Art. 13 of the Hague Service Convention is not applicable").

[100]     *Frummer v. Hilton Hotels Int'l, Inc.*, 19 N.Y.2d 533, 538 (1967).

authorization of an alternative form of service is granted.  Plaintiffs are ordered to serve counsel for Rheinmetall personally within sixty days.  The deadline for Rheinmetall to move to dismiss or answer the Complaint remains stayed until after resolution of the renewed motion to dismiss for lack of personal jurisdiction.  The Clerk of the Court is ordered to close this motion (02 MDL 1499, No. 153, and 03 Civ. 4524, No. 72).  A status conference will be held concerning jurisdictional discovery on July 6, 2009, at 4:30 p.m.

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated:      New York, New York
            June 22, 2009

## - Appearances -

**For Plaintiffs Balintulo *et al.*:**

Michael D. Hausfeld, Esq.
Hausfeld LLP
1700 K Street, NW, Suite 650
Washington, DC 20006
(202) 579-1089

Matt Schultz, Esq.
Levin Papantonio Thomas Mitchell
   Echsner & Proctor, P.A.
316 South Baylen Street, Suite 600
Pensacola, Florida 32502
(850) 435-7140

Steig D. Olson, Esq.
Hausfeld LLP
11 Broadway, Suite 615
New York, New York 10004
(212) 830-9850

Robert G. Kerrigan, Esq.
Kerrigan, Estess, Rankin & McLeod,
   LLP
627 East Government Street
Pensacola, Florida 32502
(850) 444-4402

**For Defendant Rheinmetall AG.:**

Jerome S. Hirsch, Esq.
Robert E. Zimet, Esq.
Susan L. Saltzstein, Esq.
Skadden, Arps, Slate, Meagher
   & Flom LLP
Four Times Square
New York, New York 10036
(212) 735-3000